## WILLIAM WHITNEY *vs.* CHARLES T. EAMES.

The owner of a mill and mill pond, and of land bordering on a stream, conveyed to A. the upper part of said land, with "a privilege to the grantee to dig a ditch," from a certain point, "large and deep enough to convey all the water into the river, without overflowing the meadow, where it will do the grantor's land the least damage:" The grantor afterwards conveyed the lower part of the land to B., who erected a mill dam thereon, and thereby flowed the water back into the ditch which A. had dug, in pursuance of his grant; and A. brought an action against B. to recover damage for such flowing. *Held,* that B. could not defend by showing that he, with the knowledge of A., and without objection from him, erected said dam, and continued it for several years before A. dug his ditch so deep as to be affected thereby, and that the damage to A. was occasioned by the sinking of his ditch to a level below that at which it was when B.'s dam was erected.

TRESPASS UPON THE CASE, to recover damages for causing the water of a stream in Milford to flow back upon the wheel of the plaintiff's mill, by means of a mill dam erected across the stream, by the defendant, in 1839. Trial before *Hubbard,* J. whose report thereof was as follows:

The plaintiff, to prove his title and his right to run his mill, as against the claims of the defendant, introduced a deed of David Stearns, (who then owned the premises on which are the mills of the plaintiff and the defendant, and all the dams, ditches and flowing hereafter mentioned,) to Nathan Parkhurst, dated August 24th 1803. This deed conveyed to said Parkhurst the land on which the said mill stands, and through which land there had then been recently dug a trench for the purpose of conveying the water from the mill pond southerly, to and by the mill, to the south line of the land conveyed by said deed; which trench is therein called "the new dug way." Said deed contained this clause, to wit; "the grantor hereby grants a privilege to the grantee to dig a ditch from the south end of the new dug way, large and deep enough to convey all the water into the river, without overflowing the meadow, where it will do the grantor's land the least damage."

The plaintiff also introduced evidence of sundry mesne conveyances, showing that he had acquired the land, &c. conveyed by the said deed of Stearns to Nathan Parkhurst.

The plaintiff then introduced evidence tending to prove that

the defendant, in 1839, erected his mill and dam across said stream, whereby the water was flowed back into the ditch and into the dug way mentioned in said deed of David Stearns to Nathan Parkhurst, and so high as to obstruct the plaintiff's mill wheel, since December 1845 ; and also tending to prove that the plaintiff's mill and dam were erected and put in operation in 1803, and that the mill and wheel were nearly, if not entirely, in the same situation as at the time when the defendants' mill and dam were erected in 1839.

The defendant introduced a deed, made by David Stearns, on the 5th of March 1814, to Samuel L. Scammell, which conveyed to said Scammell all the land on which the defendant's mill, dam and mill pond are situated, with other lands ; also the deed of said Scammell to Perley Hunt, dated April 19th 1828, conveying the land on which the defendant's mill pond is situated, and a deed of the same premises from said Hunt to the defendant, dated February 25th 1839 ; also a deed of said Scammell to Ithiel Parkhurst, dated March 1st 1832, conveying about three acres of land, on a part of which the defendant's mill and dam stand ; and also sundry mesne conveyances, by which he (the defendant) acquired title to the premises described in said deed of Scammell to said Ithiel.

The defendant then offered to prove that his dam was erected in 1839, with the knowledge of the plaintiff, and without objection made by him ; that previously to October 1845, the plaintiff's dug way and ditch, mentioned in said deeds, had never been reduced to so low a level that the water raised by the defendant's dam did or could flow back upon the plaintiff's mill ; and that, if the plaintiff had suffered injury by the flowing back of the water upon his mill, it had been occasioned by his digging out and reducing the level of his said dug way and ditch, in October 1845, below what they had ever been before, and lowering his wheel at the same time.

The judge ruled that the facts, so offered to be proved, would not, if proved, constitute a legal defence to the plaintiff's action. The defendant thereupon consented that a

verdict should be taken for the plaintiff, subject to the opinion of the whole court as to the said ruling.

*Newton & Chapin,* for the defendant.

*C. Allen & F. H. Dewey,* for the plaintiff.

The decision was made at October term 1847.

DEWEY, J.   The course of argument relied on in the defence is founded upon certain general principles of law regu‑ lating the rights of the various owners of mill sites, or lands through which a watercourse passes, that is capable of being converted to a beneficial use for a mill.   Thus it is said that the defendant, when he became the owner, in 1839, of the lower privilege, had a right, by virtue of the conveyance to him, to act, with respect to the owners above, in reference to the state of things actually existing ; and that if he permitted them to continue and uninterruptedly to use the water, to the extent of the existing appropriation, he violated no right as to the upper privilege.   This doctrine of the respective rights of adjacent owners of lands through which a watercourse passes, has been recently very fully stated by the chief justice, in the case of *Cary* v. *Daniels,* 8 Met. 466, and might, under other circumstances, well maintain a defence in favor of the lower privilege.   But the right of the plaintiff is something more than the general right acquired by force of a convey‑ ance of land with a mill privilege.   In such case, the purcha‑ ser of the upper mill privilege would purchase subject to the actual appropriation below ; and if there were no reservation, in terms, by the vendor, he would retain the privilege as ac‑ tually appropriated and used.   The plaintiff here relies upon the particular grant from the original proprietor.   Both par‑ ties claim under David Stearns, as the original proprietor of their privileges.   While Stearns owned the entire privilege, it was competent for him to make stipulations with the purchaser of the upper privilege, creating rights in that privilege, and imposing servitudes upon the lower, that would be binding upon the subsequent purchasers of the lower privilege.   Such rights seem to have been granted by the deed of Stearns to Nathan Parkhurst, dated August 24th 1803, in these words :

" The grantor hereby grants a privilege to the grantee to dig a ditch from the south end of the new dug way, large and deep enough to convey all the water into the river, without overflowing the meadow, where it will do the grantor's land the least damage." Having this right, it is no answer to the plaintiff's cause of action to say that the injury from the defendant's flowing back would not be sustained, if the plaintiff forbore to deepen his ditch. This privilege was conveyed by the deed of Stearns, and the grantee was to enjoy the undisturbed use of the water privilege, aided by the ditch dug deep enough to carry all the water.

It is then contended that the practical construction of the deed, given by the parties for so long a period prior to 1839, ought to bind them. Where the language of a deed is dubious, and, from its terms, the mind is left in doubt as to the real intention of the parties, the rule of giving effect to the practical construction, arising from the conduct of the parties, is an important one, and has often been applied. But we do not see any ground for its application here.

Nor do we perceive any available defence arising from non user, or from the fact that the defendant's dam was erected in 1839, with the knowledge of the plaintiff, and without objection then interposed by him. The plaintiff might well rely upon his legal rights, under the circumstances of the present case, and seek his remedy in an action for damages, if the defendant's dam proved, in its practical operation, injurious to the full exercise of the privileges secured to him by his deed from Stearns.

The ruling of the judge at the trial was correct, and the plaintiff is entitled to judgment.